# STATE OF MICHIGAN

# COURT OF APPEALS

In re PEREZ/FLANAGAN, Minors.

UNPUBLISHED
February 12, 2015

No. 321799
Oakland Circuit Court
Family Division
LC No. 10-772471-NA

Before: FORT HOOD, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right from the order terminating her parental rights to two of her minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (risk of harm if returned to parents). We affirm.

## I. FACTS

This appeal involves two of respondent's four children, JP and AF.[1] On May 25, 2010, petitioner, the Department of Human Services, filed a petition seeking custody of respondent's minor children, alleging that on May 21, 2010, respondent was arrested for possession of cocaine and marijuana and driving with a suspended license while AF was in the vehicle. The petition alleged that respondent had a history with Child Protective Services (CPS) dating back to 1997, when TL was born and tested positive for drugs, and that respondent continued to use drugs before the filing of the petition. At a pretrial hearing on July 1, 2010, respondent admitted that she was arrested for possession of cocaine and marijuana and driving with a suspended license, admitted that she had two prior convictions for operating a vehicle while under the influence of alcohol in 1993 and 2004, and admitted that BL, TL, and JP were placed in a guardianship in 2005 while she was in prison. The court ordered respondent to comply with a case services plan that required her to submit to a psychological evaluation and comply with all recommendations, to participate in parenting classes, to address her substance abuse problems, to complete random

---

[1] Respondent is also the mother of two older children, BL and TL, who were removed from the termination petition because the court assigned them permanency planning goals of Another Planned Permanent Living Arrangement-Emancipation (APPLA-E) due to their respective ages.

-1-

drug screens, to obtain stable housing and income, and to comply with the terms of her probation.

At a review hearing on July 21, 2011, testimony indicated that respondent missed nine drug screens and tested positive for alcohol on one screen. Following an emergency hearing on December 21, 2011, the court restricted respondent to supervised parenting visits after she failed a drug screen. At a hearing on March 15, 2012, testimony revealed that respondent completed a parenting class, participated in services to address her emotional issues and substance abuse, and passed all recent drug screens. Thereafter, the court gave petitioner the discretion to return the children, pending respondent's ability to obtain suitable housing. In August 2012, JP and AF were returned to respondent's care.

On February 4, 2013, the court held an emergency removal hearing after respondent was sentenced to 30 days' incarceration for violating her probation by driving with a suspended license, and the children were removed again. On March 22, 2013, the court held an emergency hearing after respondent was arrested a second time for driving with a suspended license and was observed with her boyfriend selling illicit substances to a minor child. Testimony revealed that respondent's boyfriend was criminally charged, and that he had been living with respondent without the knowledge of petitioner. The children's foster parents also reported that respondent called to speak with her children sounding intoxicated. On June 20, 2013, petitioner filed a supplemental petition to terminate respondent's parental rights.

On March 21, 2014, the trial court filed a termination order that declared separately that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the children's best interests.

## II. STATUTORY FACTORS

Respondent first argues that the lower court erred in finding clear and convincing evidence supported termination under the statutory factors. We review for clear error a trial court's decision to terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A decision to terminate parental rights is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the lower court made a mistake. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

To terminate parental rights, a court must find that at least one of the statutory grounds for termination set forth in MCL 712A.19b(3) is established by clear and convincing evidence. *In re Sours*, 459 Mich 624, 632; 593 NW2d 520 (1999). In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide the following:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The lower court did not clearly err in finding clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*). At the time of the adjudication, respondent admitted to possessing cocaine and marijuana and operating a vehicle while on a suspended license. Respondent's contact with CPS dated back to 1997 when one of her children was born and tested positive for cocaine. Respondent also had a history of alcohol abuse and was convicted of operating a vehicle while under the influence of alcohol in 1993 and 2004.

Respondent continued to disregard the law throughout these proceedings. Respondent's children were removed from her care a second time after she was incarcerated for violating her probation by driving with a suspended license. Shortly after she was released in 2013, respondent was cited again for driving with a suspended license. During this second incident, respondent's boyfriend was arrested because he had drugs in his possession and sold them to a minor. Respondent's involvement in the situation and her decision to drive on a suspended license demonstrated her continuing disregard for the law.

Respondent also did not rectify her substance abuse issues. Throughout the three years her children were in protective custody, respondent missed several drug screens and tested positive for alcohol and adulterants on multiple occasions. Respondent's psychological evaluation indicated she began receiving services in 2008, but failed to benefit from them. Respondent had a 25-year history of substance abuse and relapse, which continued throughout these proceedings. The trial court did not clearly err in finding that termination was proper under MCL 712A.19b(3)(c)(*i*).

A parent's failure to comply with the case service plan is evidence supporting termination under both MCL 712A.19b(3)(g) and (j). *In re White*, 303 Mich App 701, 712-713; 846 NW2d 61 (2014). Likewise, failing to provide safe and stable housing and sufficient income, and

failing to attend hearings demonstrates an inability to provide proper care and custody and a possibility of harm. *In re Laster*, 303 Mich App 485, 493-495; 845 NW2d 540 (2013). Under MCL 712A.19b(3)(j), a court may consider the possibility of both physical and emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Again, respondent's service plan required her to submit to a psychological evaluation and comply with all recommendations, to participate in parenting classes, to address her substance abuse problems, to pass random drug screens, to obtain stable housing and income, and to comply with the terms of her probation. Respondent was not consistently employed throughout the proceedings. She had four different jobs while the children were in care and several periods of unemployment. Although she completed parenting classes, she contacted one of her children in violation of a no contact order and addressed inappropriate topics with her children during visits. Moreover, despite having been through a substance abuse treatment program, respondent was unable to demonstrate that she could remain substance free. She continued to use alcohol while the children were in care. Respondent's drug and alcohol abuse and the company she kept exposed the children to a risk of harm. Accordingly, the lower court did not clearly err in terminating her parental rights under MCL 712A.19b(3)(g) and (j).

### III. BEST INTERESTS

Respondent also argues the lower court erred in finding termination was in her children's best interests. We disagree. We review a trial court's finding that termination was in the best interests of a child for clear error. *In re Trejo*, 462 Mich 341, 364; 612 NW2d 407 (2000).

A court shall terminate parental rights "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests." MCL 712A.19b(5); see also *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). In performing a best interest inquiry, a court may consider the bond between the child and parent, the parent's parenting skills, and the child's need for permanency and stability. *Olive/Metts*, 297 Mich App at 41-42. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Respondent argues that she had a bond with her children, but she never demonstrated that she could maintain a safe and stable home for them. The trial court stated that respondent's bond with JP was "extremely strained." Further, the court noted that the children were in protective custody for nearly 46 months, and emphasized the children's need for permanency and stability. As previously discussed, respondent failed to comply with and benefit from her case service plan. The lower court did not err in finding termination was in the best interests of the children.

Finally, respondent argues that petitioner failed to adequately assess her family for placement. However, respondent does not indicate that interested and appropriate relatives were available. Moreover, petitioner placed respondent's children with their maternal grandparents until August 2012 when the children were briefly returned to respondent's care. The court addressed the possibility of guardianship and placement with these grandparents at the best-interest hearing, but determined neither option was appropriate because the maternal

grandparents lacked suitable housing. Although a court must expressly address family placement in its best interest inquiry if the children are residing with a relative, *Olive Metts*, 297 Mich App at 43-44, in this case, respondent's children were not placed with a relative at the time the court terminated her parental rights, and a family placement was not a viable option.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Michael F. Gadola